UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19 CV 1530 RWS |
| | ) |
| UMB BANK NA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Tracy Lee worked as a bank teller and transaction specialist for defendant UMB Bank from 1997 until her termination in May of 2015. In her complaint, Lee alleges that she was terminated because of her race, African-American, in violation of 42 U.S.C. § 1981.[1]  Although initially represented by counsel, Lee now appears in this action pro se.[2]  Before the Court is UMB Bank's motion for summary judgment.  Lee has filed an opposition to summary judgment,

---

[1] Section 1981 protects the right of all persons "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The "term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

[2] Lee's counsel moved to withdraw because Lee would not cooperate with counsel in formulating a settlement demand "based upon a religious belief that there will be a divine intervention that will deliver an award to plaintiff even though the high amount expected is unrealistic." (Doc. 22 at 3). The Court granted the motion following a hearing and a 60-day stay to afford Lee the opportunity to seek new counsel, which she did not do. (Docs. 25, 28, 28, 29).

and the motion is now ripe for disposition. Because the undisputed facts demonstrate that UMB Bank is entitled to judgment as a matter of law, the bank's motion for summary judgment will be granted for the reasons set out below.

## Standards Governing Summary Judgment

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lynn v. Deaconess Medical Center*, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c) ). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on her pleadings but must produce sufficient evidence to support the existence of the essential elements of her case on which she bears the burden of proof. *Id.* at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* at 610 (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## Background Facts

Plaintiff Tracy Lee began working for defendant UMB Bank as a bank teller in 1997. In 2012, she transferred to the bank's Ferguson, Missouri branch to work as a transaction specialist. Her supervisor was Margaret Shacklady, a Caucasian female. In August of 2014, there was protest activity in Ferguson around the bank's Ferguson branch. Lee contacted the bank's human resources department complaining of a comment allegedly made by one of her fellow co-workers, an African-American female. According to Lee, her co-worker saw the protestors

outside the bank and asked, "Which one of them is drunk?"  Lee testified that her co-worker made no comments regarding the race of any of the protestors and that the protestors included Caucasians as well as African-Americans.  Lee claimed she was offended at the insinuation that the protestors were drunk.  UMB Bank investigated Lee's complaint and found that there was no discrimination or harassment.  However, to address Lee's complaint, in September of 2014 UMB Bank conducted a training presentation entitled "Building Bridges to Understanding" to discuss the events in Ferguson.

In November of 2014 Lee moved to UMB Bank's branch in Brentwood, Missouri.  Her job remained transaction specialist Lee's supervisors at the Brentwood location were Kewana Regans, an African-American female, and Leonor Mercado, an Hispanic female.  Lee had not previously worked for or with either of these women.   As a transaction specialist, Lee's job duties included handling transactions such as check cashing, deposits, consigned items, savings bonds, and loan payments, as well as generating sales referrals, also known as Qualified Introductions (QIs), by inquiring with and educating customers about the bank's products.  Lee was required to meet certain QI goals recorded in a monthly scorecard, which was reviewed with transaction specialists each month.  Lee was informed and understood that she was required to meet those scorecard goals, including generating QIs, beginning in January of 2015 and going forward.

4

Lee failed to meet any of her monthly scorecard goals during her entire tenure at the Brentwood location.[3] Lee received numerous warnings, both verbal and written, about her failure to meet expectations on numerous occasions and was offered assistance by both Mercado and Regans to achieve her scorecard goals, but she declined their offers. Lee was specifically warned verbally and in writing that her failure to meet performance expectations could result in the termination of her employment. On March 13, 2015, Lee received a verbal warning from Mercado for failing to meet her performance expectations. This verbal warning was memorialized in writing and appears in the record as Document 49-7. This verbal warning details numerous mistakes made by Lee and reminds her of previous coaching she received in February for failing to secure her teller drawer and for failing to meet her scorecard goals for January and February. (Doc. 49-7). Lee signed this document and by doing so acknowledged that her failure to improve performance could result in termination. (Doc. 49-7). Following this warning, Lee was offered assistance by Mercado and Regans, which Lee admittedly declined. (Doc. 49-2 at 34). On April 6, 2015, Lee received a written warning from Mercado for her continued failure to meet performance expectations, including her failure to meet her scorecard goals for March. (Doc. 49-8). Lee signed this document,

---

[3] Lee also admits that she never met any of her scorecard goals while employed by UMB Bank, including while at the Ferguson branch. (Doc. 49-2 at 26).

5

again acknowledging that her continued failure to improve performance could result in her termination. (Doc. 49-8). Finally, on May 11, 2015, Regans and Mercado met with Lee and informed her that once again she did not meet her scorecard goals. Lee was shown her scorecard and reminded of her verbal and written warnings. Regans and Mercado then terminated Tracy Lee's employment. (Doc. 49-9).

Lee's complaint alleges that she was discriminated against on the basis of her race because she was terminated for not meeting her scorecard goals while similarly situated Caucasian employees were not fired for failing to meet performance goals. Lee's complaint does not name any similarly-situated Caucasian employees. In her deposition, Lee stated that she did not believe she was discriminated against on the basis of her race by UMB Bank. (Doc. 49-1 at 4-5, 16, 16 and Doc. 49-2 at 22, 23, 35). Instead, she stated that she was terminated in retaliation for her complaint about the Ferguson protestors in 2014. (Doc. 49-1 at 4) ("To my understanding, the claim that I'm bringing is retaliation."). Lee's complaint does not state a claim for retaliation. It is undisputed that Mercado and Regans made the decision to terminate plaintiff's employment and that they had no knowledge of Lee's prior complaint about the Ferguson protestors when they made the decision to terminate her. (Doc. 49-6 at 4). In her deposition, Lee admitted that neither Mercado nor Regans ever retaliated against her. (Doc. 49-2 at 22).

6

Lee named one Caucasian employee, Heather Feltes, who worked with her at the Brentwood branch who told her that she did not meet her scorecard goals for the month of April, but was not terminated.  (Doc. 49-2 at 30-31).  Lee has no knowledge whether Feltes ever received any verbal or written warnings for her failure to meet scorecard goals, nor does Lee know whether Feltes ever failed to meet any of her other scorecard goals.  (Doc. 49-2 at 31).  Lee could not identify any other similarly-situated employees who were not terminated for failing to meet performance expectations.

In her opposition to summary judgment, Lee admits that she "stated under oath that I did not believe that I was discriminated against by my former employer . . . however, I do believe that I have experienced practices by my former employer . . . ."  (Doc. 53 at 2).  Lee then goes on to claim that Shacklady, her previous supervisor at the Ferguson branch, "did not follow the management guidelines" but was not terminated.  (Doc. 53 at 2).  According to Lee, Shacklady did not perform her job because she did not "create[e] an environment where [Lee] could thrive in [her] role . . . ."  (Doc. 53 at 6).  Lee then goes on to describe conversations she allegedly had with UMB Bank employees long after she was terminated that she claims supports her version of events.[4]  Lee also argues that her termination was

---

[4] These conversations are completely unrelated to Lee's employment with UMB Bank and do not create any triable issues with respect to whether Lee was discriminated or retaliated against.

7

pretextual because she never met any of her scorecard goals "the entire time" she was employed by UMB Bank but that she was not terminated until 2015.  (Doc. # 53 at 3).  She also reiterates her allegation that she was terminated because of her complaint about protestors at the Ferguson branch.

## Discussion

Tracy Lee's § 1981 race discrimination claim is analyzed under the same standards applicable to race discrimination claims brought under Title VII.  *Stone v. McGraw Hill Financial, Inc.*, 856 F.3d 1168, 1173 n.4 (8th Cir. 2017).  Where, as here, there is no direct evidence of discrimination, courts employ the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Title VII case).  Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination.  *Id.* at 802; *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994).  To establish a prima facie case of race discrimination under *McDonnell Douglas*, plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her position as transaction specialist; (3) she was discharged; and (4) the discharge occurred in circumstances which give rise to an inference of unlawful discrimination.  *Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005).  If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse

employment action. *McDonnell Douglas*, 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." *Hicks*, 509 U.S. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. *Hicks*, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. *Hicks,* 509 U.S. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. *Id.*; *see also Huston v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the

9

employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996).

To the extent Tracy Lee brings a § 1981 retaliation claim, the Court again applies the "same *McDonnell Douglas* analytical framework to a retaliation claim under [42 U.S.C.] § 1981." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). Because there is no direct evidence of retaliation, Lee must make a prima facie case. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013). To do so, she must show: "(1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two." *Kim*, 123 F.3d at 1060. A causal relationship exists where "the desire to retaliate was the but for cause of [plaintiff's] termination – that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of [defendant]." *Sayger*, 735 F.3d at 1032 (quotation marks and citation omitted) (alterations added). Protected activity is "an informal or a formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question." *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000).

The Court must first address the issue of what claims Tracy Lee has actually brought in this lawsuit. UMB Bank is correct that Lee's complaint brings no claim of retaliation, although the pleading does mention Lee's complaint about the protests. Lee has never sought leave to amend her complaint to assert a claim of retaliation. However, even if the Court liberally construes Lee's complaint to include a claim of retaliation, it fails as a matter of law. Lee offers no evidence demonstrating a link between her alleged protected activity in August of 2014 and her subsequent termination in May of 2015. Lee's complaint was made at the Ferguson branch. She was subsequently transferred to the Brentwood branch where she was supervised by Regans and Mercado. It is undisputed that Regans and Mercado had no knowledge of Lee's prior complaint when they made the decision to terminate her. A decisionmaker's lack of knowledge of any alleged protected activity at the time of termination "severs any link" between the activity and the adverse employment action. *Williams v. United Parcel Service, Inc.*, 963 F.3d 803, 808 (8th Cir. 2020); *Jackson v. United Parcel Service, Inc.* (8th Cir. 2008) ("[A] causal link does not exist" if decisionmakers were unaware of the protected activity). Although Lee speculates (without evidence) that Regans knew about her complaint because Regans' mother, a customer at the Ferguson branch, allegedly once suggested to Lee that she transfer to her daughter's branch, this conversation does not demonstrate the required nexus between her prior complaint

11

and subsequent termination, especially because there is no evidence that either Regans or Mercado knew of any complaint made by Lee.[5] *See Cherry v. Ritenour School Dist.*, 253 F. Supp. 2d 1085, 1099 (E. D. Mo. 2003) (summary judgment granted where there was no evidence that the decisionmaker was ever notified of plaintiff's complaints); *Allen v. U.S. Secretary of Defense*, Case No, 4:10CV1928 FRB, 2012 WL 401062, at *6 (E.D. Mo. Feb. 8, 2012) (unsupported contention that decision-makers knew of plaintiff's protected activity when they decided to terminate her was insufficient to defeat summary judgment on plaintiff's retaliation claim). Moreover, the almost nine-month delay between plaintiff's complaint in August of 2014 and her subsequent termination in May of 2015 is too long to support any inference of retaliation. *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) (an "interval of more than two months is too long to support an inference of causation).[6] For these reasons, UMB Bank is

---

[5] Nor does it demonstrate that Regan's mother (a customer of UMB Bank) knew about Lee's complaint either.

[6] The undisputed evidence also demonstrates that Lee did not engage in conduct protected by § 1981. Lee complained about a comment questioning which protestors were drunk and neither this comment nor her subsequent complaint made any reference to race. Because there was no mention of race, Lee's complaint does not rise to the level of protected activity actionable under § 1981. *See Smith v. International Paper Co.*, 523 F.3d 845, 849-50 (8th Cir. 2008) (retaliation claim dismissed because the complaint did not refer to any harassment or discrimination); *Gibson v. Graphic Packaging International, Inc.*, 2017 WL 3444701, at *8 (E.D. Ark. Aug. 10, 2017) (no § 1981 retaliation claim as a matter of law where plaintiff complained about overtime and a hostile work environment, not racial discrimination as prohibited by no § 1981); *Miller v. Conseco Finance Servicing Corp.*, 2002 WL 1495217, at *8 (D. Minn. July 11, 2002) (no § 1981 retaliation claim as a matter of law where plaintiff never complained of race discrimination).

entitled to judgment as a matter of law on any claim that it terminated her in retaliation for her complaint made in August of 2014.

As for the sole claim actually pleaded in Lee's complaint – that of racial discrimination, Lee repeatedly and unequivocally testified in her deposition that she was not discriminated against on the basis of her race. (Docs. # 49-1 at 4-5, 13 and 16 and # 49-2 at 22, 23, and 35); *see* (Doc. # 49-2 at 22) ("Q: [Y]ou've stated that you did not believe that you had been discriminated against on the basis of your race, is that correct?  A: That is correct."). Yet in her sworn statement in opposition to summary judgment, Lee argues that she <u>does</u> believe she was discriminated against on the basis of her race. (Doc. #53 at 2). UMB Bank contends that Lee should not be permitted to evade summary judgment by contradicting her prior deposition testimony with later, self-serving affidavits. The Court agrees. *See Wilson v. White Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) ("(a) party should not be allowed to create issues of credibility by contradicting his own earlier testimony.") (citation omitted); *Davidson & Assocs. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (stating "a properly supported motion for summary judgment is not defeated by self-serving affidavits"). Even if

13

the Court were to consider Lee's statements made in her sworn opposition to summary judgment, they could not defeat summary judgment in UMB Bank's favor in this case for the following reasons.

Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of racial discrimination through evidence giving rise to an inference that she has been intentionally discriminated against because of her race. *Young v. Builder's Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). She may do so by showing that a similarly-situated person of another race received more favorable treatment. *Id.* at 578. That person must be "similarly situated in all relevant respects." *Id.* (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012)).

"A person is similarly situated to the plaintiff if he or she possesses all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination." *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019); *see also Barstad v. Murray Cnty.*, 420 F.3d 880, 886-87 (8th Cir. 2005) (landowners denied a permit to build an RV campground on their land were not similarly situated to successor landowner who received a permit to build a dock and two cabins because, even though they sought to improve the same parcel of land, they did not seek to institute the same improvements); *Meyers v. Ford Motor Co.*, 659 F.2d 91, 93-94 (8th Cir. 1981) (white male car dealership operator who voluntarily terminated his dealership contract without negotiating was not similarly

situated to his black male predecessor because the predecessor had a long-term relationship with the car company and received a more favorable termination package by negotiating for one). "What constitutes a 'relevant respect' or characteristic varies based on the context." *Lucke*, 912 F.3d at 1087. The plaintiff has the burden of locating similarly-situated comparators. *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994).

Although Lee's complaint alleges that similarly-situated Caucasian employees were treated differently than she in support of her allegation that her termination was racially motivated, she does not name any such employees in her complaint. In her deposition, Lee testified that Feltes was not fired even though she told Lee that she did not meet her scorecard goals for the month of April. Even if true, Lee has not demonstrated that she is similarly-situated to Feltes in all relevant respects because Lee does not know if Feltes failed to meet her goals for more than one month, whereas Lee failed to meet <u>any</u> of her scorecard goals during the entire time of her employment by UMB Bank, including while at the Brentwood branch.

In opposition to summary judgment, Lee also complains that her supervisor at the Ferguson branch, Shacklady, "did not do her job" properly but was not terminated. This allegation, even if true, does not demonstrate that Shacklady was a "similarly situated employee" because plaintiff offers no evidence that

15

Shacklady, a managerial employee and her supervisor, was even subject to the same scorecard goals as Lee, much less that she consistently did not meet them. Moreover, Lee's personal belief that Shacklady "did not perform her job" because she did not "create an environment where [plaintiff] could thrive in [her] role" does not demonstrate a prima facie case of racial discrimination or otherwise create a disputed issue of material fact sufficient to avoid summary judgment.

Even if the Court assumes for purposes of deciding the summary judgment motion only that Lee could establish a prima facie case of racial discrimination, UMB Bank has proffered a legitimate, non-discriminatory reason for terminating Lee's employment – namely, that Lee failed to meet her performance and scorecard goals while at the Brentwood location. This is a legitimate, non-discriminatory reason sufficient to discharge the bank's burden. *See Fiero v. CSG Sys., Inc.,* 759 F.3d 874, 878 (8th Cir. 2014) ("performance-related concerns constitute legitimate, non-discriminatory justifications for discharging [plaintiff]."). The burden then shifts back to Lee to demonstrate that this proffered reason for her termination was merely a pretext for intentional racial discrimination. Lee cannot meet this burden. Lee points to the fact that she never met her scorecard goals for the entirety of her employment with UMB Bank, but she does not dispute that she was specifically and consistently told when she transferred to the Brentwood branch that beginning in 2015 she was expected to

16

meet her scorecard goals each month and that her failure to do so could result in her termination. Lee also does not dispute that Regans and Mercado, her supervisors and the decisionmakers in this case, consistently and repeatedly pointed out Lee's continued failures to meet performance expectations and warned her that these failures could lead to her termination. Under these circumstances, Lee has not demonstrated pretext or created a triable issue of fact on her termination claim simply because her scorecard goals may not have been enforced at other locations prior to her transfer to the Brentwood branch.

The Court has also considered whether Lee's proffered evidence regarding Feltes and Shacklady demonstrates evidence of pretext as "the existence of employees who were 'involved in or accused of the same or similar conduct and are disciplined in different ways is sufficient to show pretext." *Cherry*, 253 F. Supp. 3d at 1097 (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)). It does not, for the same reasons given above; namely, that Tracy Lee has not demonstrated that she was "similarly situated" to either of these women. Lee's conclusory allegations of disparate treatment are insufficient to demonstrate pretext and preclude summary judgment. *See Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998). Lee's remaining "evidence" – consisting of random conversations with bank employees long after she was terminated – do not relate to the issue of whether she was intentionally discriminated against by UMB

Bank and are insufficient to defeat summary judgment on Lee's racial discrimination claim.  Because Tracy Lee has come forward with no evidence from which a reasonable fact-finder could conclude that the stated reason for her termination was merely a pretext for intentional racial discrimination, defendant UMB Bank's motion for summary judgment will be granted.

Conclusion

Because Tracy Lee has failed to come forward with any evidence that she was retaliated or discriminated against by defendant UMB Bank, the bank is entitled to judgment as a matter of law on Lee's complaint, and this action will be dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [48] is granted, and plaintiff's claims against defendant are dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February, 2021.